Affirmed as Reformed and Memorandum
Opinion filed May 24, 2011

 

In
The

Fourteenth
Court of Appeals



NO. 14-10-00872-CR

NO.
14-10-00873-CR

NO.
14-10-00874-CR

NO.
14-10-00875-CR



Kevin Mitchell
Wyatt, Appellant 

v.

The State of
Texas, Appellee 



On Appeal from
the 338th District Court

Harris County, Texas

Trial Court
Cause Nos. 1182847, 1182848, 1182895, 1185370



 

MEMORANDUM OPINION 

The State charged appellant Kevin Mitchell Wyatt by
indictment of the offenses of unauthorized use of a motor vehicle, evading arrest
or detention with a vehicle, possession of a controlled substance, and
aggravated robbery.  A jury found appellant guilty of all charged offenses and
assessed punishment at twenty years’ confinement for unauthorized use of a
motor vehicle, twenty years’ confinement for evading arrest or detention with a
motor vehicle, ten years’ confinement for possession of a controlled substance,
and seventy-five years’ confinement for aggravated robbery.  Appellant challenges
his convictions in five issues in this appeal.  We reform the judgment in cause
no. 1182848, the conviction for evading arrest or detention in a vehicle, and affirm
that judgment as reformed; we also affirm the other judgments.  

Background

On the evening of September 6, 2008, Charles Bock
pulled into the parking lot of a Barnes & Noble store.  Bock had just
gotten out of his vehicle, a Lexus RX 300, when he turned around and saw appellant
standing there with a gun in his right hand.  Appellant told Bock to “[p]ut
everything on the ground, and everything that’s in your hands, put it on the
ground.”  Bock put his wallet on the ground and kept his keys in his hand. 
Appellant took the keys from Bock and told him to “go lay down in the grass” in
front of his car.  Bock obeyed, and appellant then pulled the pager out of
Bock’s pocket, got into Bock’s Lexus, and drove away.  

Four days later, on the night of September 10, 2008,
Officer David Ciers of the Houston Police Department was parked in a marked
patrol car on the right shoulder of Highway 290, with a handheld laser device
clocking vehicles for speed.  Officer Ciers clocked appellant in a Lexus going
ninety miles per hour.  Officer Ciers attempted to initiate a traffic stop; he was
unsuccessful, and a high-speed chase ensued.  

Deputy Timothy Robinson of the Harris County
Sheriff’s Office joined the pursuit until it ended when appellant drove into
the parking lot of a car wash.  Appellant jumped out of the vehicle, and Officer
Ciers chased him on foot until appellant jumped over a fence leading to an
apartment complex.  Canine units from the Sheriff’s Department and the Houston
Police Department searched for the suspect.  A tenant and his wife directed the
officers to a specific apartment and indicated that was where they had last
seen the suspect.  

Meanwhile, Bonnie Boyd, who dated appellant,
testified that appellant arrived at her apartment late the night of September
10, 2008, saying, “They are coming.” He told her he loved her and took her into
the bathroom.  Appellant further told Boyd that the police were chasing him and
that he had “ditched the car.”  Appellant was trying to get rid of the drugs he
had—about a hundred dollars’ worth of crack cocaine, or about ten rocks—by
smoking it in the bathroom.  Both appellant and Boyd smoked the cocaine. 
Appellant took the battery out of Boyd’s cell phone so that she could not use
it and the police would not hear the phone ring inside the apartment.  

Deputy Robinson testified that officers were knocking
at both the front and back doors of the apartment to which the neighbors
directed.  The officers heard muffled voices and continued knocking for several
minutes until Bonnie Boyd answered the door, let the officers into the apartment,
and consented to their search of her apartment.  Deputy Robinson found
appellant in the bedroom under the covers with his clothes and shoes on,
sweating profusely, and pretending to be asleep.  Boyd gave the officers permission
to search the apartment.  The officers found a Lexus first aid kit in the
bedroom, a crack pipe in the bathroom, and a BB gun in a kitchen drawer.  Forensic
testing on the crack pipe revealed that it contained cocaine residue.  

Appellant pleaded “not guilty” to the charges of
unauthorized use of a motor vehicle, evading arrest or detention with a
vehicle, possession of a controlled substance, and aggravated robbery.  Each
offense was enhanced by two felony convictions to which appellant pleaded “not
true.”  After finding appellant guilty of each offense and each enhancement
paragraph true, the jury assessed punishment at twenty years’ confinement for
unauthorized use of a motor vehicle, twenty years’ confinement for evading
detention, ten years’ confinement for possession of a controlled substance, and
seventy-five years’ confinement for aggravated robbery.  

In five issues on appeal, appellant contends that (1)
the evidence is legally insufficient to support his conviction for aggravated
robbery because the State failed to prove that he used or exhibited a deadly
weapon, to wit: a firearm, as charged in the indictment, (2) the evidence is
legally insufficient to support his convictions for possession of a controlled
substance and aggravated robbery because the State failed to prove that he
committed those offenses in the State of Texas, (3) the evidence is legally
insufficient to support his conviction for possession of a controlled substance
because the State failed to prove that he possessed cocaine, (4) the trial
court improperly listed the range of punishment in the jury charge as two to
twenty years in prison while the indictment only allowed a sentence of up to
two years in the state jail, and (5) he received ineffective assistance of
counsel.  

Legal Sufficiency

Appellant brings legal sufficiency challenges in his
first, second, and third issues.  When reviewing the sufficiency of the
evidence, we view all of the evidence in the light most favorable to the
verdict to determine whether the jury was rationally justified in finding guilt
beyond a reasonable doubt.  Isassi v. State, 330 S.W.3d 633, 638 (Tex.
Crim. App. 2010); Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim.
App. 2007).  We defer to the fact finder’s responsibility to fairly resolve
conflicts in testimony, to weigh the evidence, and to draw reasonable
inferences from the facts.  Clayton v. State, 235 S.W.3d 772, 778 (Tex.
Crim. App. 2007).  Our duty as a reviewing court is to ensure that the evidence
presented actually supports a conclusion that the defendant committed the
crime.  Williams, 235 S.W.3d at 750.  

Circumstantial evidence is as probative as direct
evidence in establishing the guilt of the actor, and circumstantial evidence
alone can be sufficient to establish guilt.  Hooper v. State, 214 S.W.3d
9, 13 (Tex. Crim. App. 2007).  The same standard of review is used for both
circumstantial and direct evidence.  Id.  Each fact need not point
directly and independently to the guilt of the appellant as long as the
cumulative force of all the incriminating circumstances is sufficient to
support the conviction.  Id.  

Use and
Exhibition of a Firearm

In his first issue, appellant challenges the legal
sufficiency of the evidence supporting his conviction for aggravated robbery, alleging
the State failed to present any evidence that the weapon used during the
robbery was a firearm.  A person commits the offense of robbery if, in the
course of committing theft and with intent to obtain or maintain control of the
property, he (1) intentionally, knowingly, or recklessly causes bodily injury
to another, or (2) intentionally or knowingly threatens or places another in
fear of imminent bodily injury or death.  Tex.
Penal Code Ann. § 29.02(a)(2) (West 2003).  A robbery is aggravated if
the person uses or exhibits a deadly weapon in the course of committing the
robbery.  Tex. Penal Code Ann. §
29.03(a)(2) (West 2003).  

The State alleged in the indictment, in relevant
part, that appellant:

unlawfully, while in the course of committing theft of
property owned by CHARLES BOCK and with intent to obtain and maintain control
of the property, intentionally and knowingly threaten and place CHARLES BOCK in
fear of imminent bodily injury and death, and the Defendant did then and there
use and exhibit a deadly weapon, to wit:  A FIREARM.

A deadly weapon is defined as “a firearm or anything
manifestly designed, made, or adapted for the purpose of inflicting death or
serious bodily injury.”  Tex. Penal Code
Ann. § 1.07(a)(17)(A) (West Supp. 2009).  Therefore, a firearm is a
deadly weapon per se.  Ex parte Huskins, 176 S.W.3d 818, 820 (Tex. Crim.
App. 2005).  A firearm is “any device designed, made, or adapted to expel a
projectile through a barrel by using the energy generated by an explosion or
burning substance or any device readily convertible to that use.”  Tex. Penal Code Ann. § 46.01(3) (West
Supp. 2009).  A “gun” is a much broader term than “firearm” and may include
such non-lethal instruments as BB guns, blow guns, pop guns, and grease guns.  O’Briant
v. State, 556 S.W.2d 333, 336 (Tex. Crim. App. 1977); Arthur v. State,
11 S.W.3d 386, 389 (Tex. App.—Houston [14th Dist.] 2000, pet. ref’d).  

Appellant complains that Bock never described the
type of gun used in the robbery, and the State never presented any gun as demonstrative
of the type appellant used.  Instead, appellant asserts that the only evidence
describing the possible gun used was the BB gun found in Boyd’s apartment.  We
disagree.

Bock testified that appellant pointed a gun at him. 
Bock, who is a former Marine and is “familiar with weapons,” testified that the
gun “appeared to be a weapon to me.”  Bock described the gun as similar to a
“Glock-type gun.”  Bock further stated that “[a]s far as the actual recall of
giving a registered name to it, I just looked at this and saw that it was a weapon.” 
Bock could not say of his own knowledge whether it was a real gun—he did not
see the action work to determine if it would work like a real gun.  Bock
testified that when appellant told Bock to lie in front of the car, “that’s
when I was really unsure of what was fixing to happen.”  His testimony showed
that as far as Bock knew, he thought appellant would shoot him—“[i]t was
questionable” whether or not he would live.

Deputy Robinson recovered a BB gun from Boyd’s apartment. 
Deputy Robinson did not have any indication or personal knowledge that the BB
gun was involved in the aggravated robbery; it was merely a piece of evidence
recovered from the apartment.  Boyd testified that the BB gun belonged to her. 


As outlined above, Bock testified that appellant
pointed a “gun” at him and described the gun as similar to a “Glock-type gun.” 
“Testimony using any of terms ‘gun,’ ‘pistol’ or ‘revolver’ is sufficient to
authorize the jury to find that a deadly weapon was used.”  Wright v. State,
591 S.W.2d 458, 459 (Tex. Crim. App. 1979); see also Price v. State, 227
S.W.3d 264, 266–67 (Tex. App.—Houston [1st Dist.] 2007, pet. dism’d, untimely
filed) (holding, based on testimony by one victim that the appellant put a gun
in her face and second victim that the appellant pointed a gun at him, the jury
could have found beyond a reasonable doubt that the gun the appellant used and
exhibited during the robbery, which was never recovered, was a firearm); Brown
v. State, 212 S.W.3d 851, 860–61 (Tex. App.—Houston [1st Dist.] 2006, pet.
ref’d) (op. on reh’g) (holding evidence was legally sufficient to support
finding that the gun used was a firearm based on witness testimony that a gun
was pointed at her and the children); Davis v. State, 180 S.W.3d 277,
286 (Tex. App.—Texarkana 2005, no pet.) (holding evidence was legally
sufficient to allow the jury to conclude that the appellant used a firearm
where the victim testified that appellant pointed a gun at her and she was
afraid she was going to die that night, even though she was not asked to
identify the type of weapon and the record contained no other relevant evidence
on that point).  

Moreover, when appellant pointed the gun at Bock and
ordered him to lie on the ground, Bock feared that appellant was going to kill
him.  Where the accused threatens the victim with a gun, the act itself
suggests that the gun is a firearm rather than merely a gun of the non-lethal
variety.  Edwards v. State, 10 S.W.3d 699, 701 (Tex. App.—Houston [14th
Dist.] 1999), pet. dism’d, improvidently granted, 67 S.W.3d 228 (Tex.
Crim. App. 2002); Toy v. State, 855 S.W.2d 153, 159 (Tex. App.—Houston
[14th Dist.] 1993, no pet.); Benavides v. State, 763 S.W.2d 587, 589
(Tex. App.—Corpus Christi 1988, pet. ref’d).  

The fact finder is free to draw reasonable inferences
and make reasonable deductions from the evidence as presented within the
context of the crime.  Cruz v. State, 238 S.W.3d 381, 388 (Tex.
App.—Houston [1st Dist.] 2006, pet. ref’d); Toy, 855 S.W.2d at 159; Benavides,
763 S.W.2d at 588–89.  Absent any specific indication to the contrary at trial,
the jury may draw the reasonable inference or make the reasonable deduction the
gun used in the commission of the crime was a firearm.  Cruz, 238 S.W.3d
at 388; Davis, 180 S.W.3d at 286; Benavides, 763 S.W.2d at 589.  Although
Deputy Robinson recovered a BB gun from Boyd’s apartment, he did not have any
indication that it was involved in the aggravated robbery.  Here, without
regard to the recovery of a BB gun, the jury was permitted to draw the reasonable
inference or make the reasonable deduction that the gun appellant used during
the robbery was a firearm. 

Viewing the evidence in the light most favorable to
the jury’s verdict, we conclude that a rational jury could have found beyond a
reasonable doubt that the gun used in the robbery was a firearm.  Accordingly,
we overrule appellant’s first issue.  

Jurisdiction

In his second issue, appellant challenges the legal
sufficiency of the evidence supporting his convictions for aggravated robbery
and possession of a controlled substance because the State failed to prove that
appellant committed the offenses in the State of Texas.  Texas has jurisdiction
over an offense if the conduct comprising the offense occurs inside this
state.  Tex. Penal Code Ann. §
1.04(a)(1) (West 2003); Gunter v. State, 327 S.W.3d 797, 799 (Tex.
App.—Fort Worth 2010, no pet.); Torres v. State, 141 S.W.3d 645, 654
(Tex. App.—El Paso 2004, pet. ref’d); St. Julian v. State, 132 S.W.3d
512, 515 (Tex. App.—Houston [1st Dist.] 2004, pet. ref’d).  Jurisdiction can be
proven circumstantially.  James v. State, 89 S.W.3d 86, 89 (Tex.
App.—Corpus Christi 2002, no pet.).  

With respect to the offense of aggravated robbery, Bock
testified that the Barnes & Noble parking lot where the aggravated robbery
occurred is located in Harris County.  Officer Ciers testified that, because
Bock’s car was stolen in Harris County, he allowed the Harris County Sheriff’s
Department to assist him in recovering evidence in the county.  With respect to
the offense of possession of controlled substance, the State introduced into
evidence the Harris County Sheriff’s Department’s voluntary consent for search
and seizure form Boyd signed permitting the search of her apartment located
“13050 Champions Park Dr. #401 Houston TX 77069 in Harris County, Texas,” where
the cocaine was recovered.  

The evidence reflects that the aggravated robbery and
possession of cocaine occurred in Harris County.  Evidence that an offense
occurred within Harris County is sufficient to establish that the State of
Texas has jurisdiction over the offense pursuant to section 1.04(a).[1]  We
conclude that the evidence is legally sufficient to establish that the offenses
occurred in Harris County, Texas.  Accordingly, we overrule appellant’s second
issue.  

Possession
of Cocaine

In his third issue, appellant challenges the legal
sufficiency of the evidence supporting his conviction for possession of a
controlled substance because the State failed to prove that he possessed
cocaine.  Appellant argues that, although the evidence shows that the cocaine
on the crack pipe was seized from the apartment where appellant was found,
there is no evidence affirmatively linking him to the contraband.  

A person commits an offense if he knowingly or
intentionally possesses less than 1 gram of cocaine.  Tex. Health & Safety Code Ann. § 481.115(a), (b) (West 2010). 
To prove unlawful possession of a controlled substance, the State must establish
that the accused: (1) exercised control, management, or care over the
substance, and (2) knew the matter possessed was contraband.  Poindexter v.
State, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005).  When, as here, the
controlled substance is not in the exclusive control of the defendant in the
place or premise where it is found, the State must make a showing of links
between the accused and the controlled substance.  Evans v. State, 202
S.W.3d 158, 161–62 (Tex. Crim. App. 2006).  “Mere presence at the location
where drugs are found is thus insufficient, by itself, to establish actual
care, custody, or control of those drugs.”  Id. at 162.  However,
presence or proximity combined with other direct or circumstantial evidence, i.e.,
links, may be sufficient to establish the elements of possession beyond a
reasonable doubt.  Roberts v. State, 321 S.W.3d 545, 549 (Tex.
App.—Houston [14th Dist.] 2010, pet. ref’d).  

The term links is used “merely as a shorthand
catch-phrase for a large variety of circumstantial evidence that may establish
the knowing ‘possession’ or ‘control, management, or care’ of some item such as
contraband.”  Evans, 202 S.W.3d at 161 n.9.  The Texas Court of Criminal
Appeals has identified a nonexclusive list of links relevant to determining
whether evidence is sufficient to prove a knowing possession.  Id. at
162 & n.12.[2] 
The State need not establish all of the links.  See Moreno v. State, 195
S.W.3d 321, 326 (Tex. App.—Houston [14th Dist.] 2006, pet. ref’d) (“The number
of factors present is not as important as the logical force the factors have in
establishing the elements of the offense.”).  

Appellant argues that his mere presence in the
apartment where the crack pipe was found is not sufficient to demonstrate that
he knowingly possessed the cocaine.  However, the evidence establishes more
than appellant’s mere presence at the location were the cocaine was found.  Boyd
testified that when appellant arrived at her apartment on September 10, 2008,
he stated that “[t]hey are coming” and took her into the bathroom.  While in
the bathroom, appellant then told her that the police were chasing him and he
had ditched the car.  At appellant’s suggestion, Boyd and appellant smoked about
$100 worth of cocaine in an attempt to get rid of the drugs.  

Additional circumstantial evidence linking appellant
to the crack cocaine included appellant’s flight from the police and his presence
during the search.  The crack pipe, which contained cocaine residue, was in
plain view and accessible to appellant.  Appellant was in the bedroom adjacent
to the bathroom where the crack pipe was found, and his behavior indicated a
consciousness of guilt, i.e., he was in the bed under the covers, fully dressed
with shoes, sweating profusely, and pretending to be asleep.  

Viewing the evidence in the light most favorable to
the jury’s verdict, we conclude that a rational jury could have found beyond a
reasonable doubt that appellant exercised control, management, or care over the
cocaine.  Accordingly, we overrule appellant’s third issue.  

Range of Punishment

In his fourth issue, appellant contends that in the
jury charge the trial court improperly stated the range of punishment for
evading arrest or detention as two to twenty years in prison because the
indictment only allowed a sentence of up to two years in the state jail and,
therefore, his sentence is illegal and falls outside the proper range of
punishment.  

The offense of evading arrest or detention is a state
jail felony if “the actor uses a vehicle while the actor is in flight and the
actor has not been previously convicted under this section.”[3]  A state
jail felony is punishable by confinement in a state jail for any term of not
more than two years or less than 180 days and a fine not to exceed $10,000.  Tex. Penal Code Ann. § 12.35(a), (b)
(West Supp. 2009).  “If it is shown on the trial of a state jail felony
punishable under Section 12.35(a) that the defendant has previously been
finally convicted of two felonies, and the second previous felony conviction is
for an offense that occurred subsequent to the first previous conviction having
become final, on conviction the defendant shall be punished for a second-degree
felony.”  Tex. Penal Code Ann. §
12.42(a)(2) (West Supp. 2009); see also Ingram v. State, 213 S.W.3d 515,
519 (Tex. App.—Texarkana 2007, no pet.) (“[I]f the state-jail felony is
punishable under Section 12.35(a) and the defendant has previously been
convicted of two felonies, sequentially, then punishment is for a second-degree
felony.”).  

The enhancement paragraphs in the indictment for the
charge of evading arrest or detention in a vehicle allege as follows:

            Before the commission of the offense alleged
above (hereinafter styled the primary offense), on JUNE 21, 1989 in Cause No.
0532355, in the 178TH District Court of HARRIS County, Texas, the Defendant was
convicted of the felony offense of ROBBERY.

            Before the commission of the primary offense,
the Defendant committed the felony of FORGERY and was convicted on SEPTEMBER
02, 1987, in Cause No. 0472813in the 183RD District Court of HARRIS County,
Texas.

Appellant previously had been convicted on June 21,
1989, of the felony offense of robbery in cause no. 532355 in the 178th
District Court of Harris County, Texas, and had been convicted on September 2,
1987, of the felony offense of forgery in cause no. 472813 in the 183rd
District Court of Harris County, Texas.  During the punishment stage of the
trial, the State introduced into evidence, without objection, the “pen packets”
containing the judgments from the forgery and robbery convictions, the second
of which was for an offense (robbery) that occurred after the first previous
conviction (forgery) had become final.  The trial court instructed the jury,
without objection, on enhancement pursuant to section 12.42(a)(2).  

Appellant waived this complaint on appeal by failing
to object to any purported lack of notice of the State’s intent to enhance the
offense from a state jail felony to a second degree felony.  See Tex. R. App. P. 33.1(a) (requiring that
a complaint be made to the trial court by a timely request, objection, or
motion in order to preserve error); Callison v. State, 218 S.W.3d 822,
826 (Tex. App.—Beaumont 2007, no pet.) (finding waiver where the appellant
never raised any objection at trial or in a post-trial motion to the State’s failure
to comply with requirements regarding notice of its intent to seek an enhanced
penalty); Fairrow v. State, 112 S.W.3d 288, 293 (Tex. App.—Dallas 2003, no
pet.) (finding the appellant’s motion for new trial preserved complaint that
the trial court assessed illegal sentence because the State did not give the
appellant notice of its intent to seek enhancement).  

Even if appellant had preserved error, we conclude
that appellant’s twenty-year prison sentence is not outside the proper range of
punishment and, as explained below, appellant was not deprived due process for lack
of sufficient notice of the State’s intent to enhance his sentence pursuant to
section 12.42(a)(2).  

Appellant contends that, even if the enhancements
were found to be true, the enhancements do not authorize the punishment of the
offense as a second degree felony because the indictment did not track the
language of section 12.42(a)(2), and the State did not provide written notice
to the defense of its intent to enhance the punishment pursuant to that section.
 Due process does not require pretrial notice “‘that the trial on the
substantive offense will be followed by a habitual criminal proceeding.’”  Pelache
v. State, 324 S.W.3d 568, 576 (Tex. Crim. App. 2010) (quoting Oyler v.
Boles, 368 U.S. 448, 452 (1962)); see also Villescas v. State, 189
S.W.3d 290, 294 (Tex. Crim. App. 2006) (“Under Oyler, due process does
not even require that the notice be given before the guilt phase begins, much
less that it be given a number days before trial.”).  However, “a defendant
must receive reasonable notice and opportunity to be heard relative to the
recidivist charge, even if due process does not require that notice be given
prior to the trial on the substantive offense.”  Oyler, 368 U.S. at 452.
 “In determining whether appellant received sufficient notice of the State’s
intent to enhance punishment, we look to the record to identify whether
appellant’s defense was impaired by the timing of the State’s notice.”  Pelache,
324 S.W.3d at 577.  

As explained above, the indictment alleged two prior
felony convictions for forgery and robbery—the robbery offense occurred after
the forgery conviction had become final.  Also, on March 12, 2010, the State
filed its notice of intention to use appellant’s prior convictions, including
the previous convictions for “Forgery, 183rd, 7 years TDC, 9/9/87” and
“Robbery, 178th, 25 years TDC, 6/21/89,” to enhance the range of punishment.  At
the beginning of the punishment phase, the State read the enhancement
paragraphs contained in the indictment.  The State introduced the “pen packets”
containing the judgments from the forgery and robbery convictions into evidence
without objection.  Finally, the trial court instructed the jury on the
enhancements pursuant to section 12.42(a)(2) without objection.  

Appellant did not request a continuance, did not, by
conduct, appear surprised by the allegations, and did not argue that he was
unprepared to defend against the prior conviction allegations.  See id. 
“‘[W]hen a defendant has no defense to the enhancement allegation and has not
suggested the need for a continuance in order to prepare one, notice given at
the beginning of the punishment phase satisfies the federal constitution.’”  Id.
(quoting Villescas, 189 S.W.3d at 294).  Moreover, the applicable
enhancement statutes provided notice that the offense of evading arrest or
detention with a vehicle, enhanced with two prior felony convictions, would be
punishable as a second-degree felony.  See id. at 578 (“[T]he applicable
statutes did inform appellant, before he rejected the state’s plea-bargain
offer and before jeopardy attached to the robbery offense, that he was subject
to the sentence enhancement with any other prior convictions under § 12.35(c)(2)(A)
and under § 12.42(a)(3) in the event that he was convicted of the
lesser-included, state-jail-felony offense of theft from a person.”).  Here, appellant
was not denied the right of due process by any purported lack of sufficient
notice that the offense of evading detention with a vehicle would be punishable
as a second degree felony.  Accordingly, we overrule appellant’s fourth issue. 


Ineffective Assistance of Counsel

In his fifth issue, appellant claims that his trial
counsel rendered ineffective assistance.  Both the United States and Texas
Constitutions guarantee an accused the right to assistance of counsel.  U.S. Const. amend. VI; Tex. Const. art. I, § 10; see also
Tex. Code Crim. Proc. Ann. art.
1.051 (West Supp. 2009).  This right necessarily includes the right to
reasonably effective assistance of counsel.  Strickland v. Washington,
466 U.S. 668, 686 (1984).  To prevail on an ineffective assistance of counsel claim,
the appellant must show that (1) counsel’s performance was deficient by falling
below an objective standard of reasonableness and (2) there is a probability,
sufficient to undermine the confidence in the outcome, but for counsel’s
unprofessional errors the result of the proceeding would have been different.  Cannon
v. State, 252 S.W.3d 342, 348–49 (Tex. Crim. App. 2008) (op. on reh’g). 
The defendant must prove ineffectiveness by a preponderance of the evidence.  Perez
v. State, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010).  Review of counsel’s
representation is highly deferential, and the reviewing court indulges a strong
presumption that counsel’s conduct fell within a wide range of reasonable
representation.  Salinas v. State, 163 S.W.3d 734, 740 (Tex. Crim. App.
2005).  

Appellant asserts that trial counsel rendered
ineffective assistance by failing to make a motion for an instructed verdict of
not guilty in his aggravated robbery case because there was no evidence that
appellant used or exhibited a firearm during the robbery.  Appellant further contends
that trial counsel rendered ineffective assistance by failing to make a motion
for an instructed verdict of not guilty in his aggravated robbery and
possession of a controlled substance cases because there was no evidence that
the offenses occurred in the State of Texas.  

Counsel is not deficient for failing to take action
that is without legal basis.  Saldana v. State, 287 S.W.3d 43, 63–64
(Tex. App.—Corpus Christi 2008, pet. ref’d); see also Jagaroo v. State,
180 S.W.3d 793, 800 (Tex. App.—Houston [14th Dist.] 2005, pet. ref’d) (“It is
not ineffective assistance for counsel to forego making frivolous arguments and
objections.”).  As we determined in appellant’s first and second issues, the
evidence is legally sufficient to establish that appellant used or exhibited a
firearm during the aggravated robbery and that the aggravated robbery and the
possession of cocaine occurred in the State of Texas.  Therefore, appellant has
not shown that the trial court would have erred in denying any motion for
instructed verdict on these grounds.  See Williams v. State, 937 S.W.2d
479, 482 (Tex. Crim. App. 1996) (treating complaint of a trial court’s failure
to grant a motion for directed verdict as a challenge to the legal sufficiency
of the evidence.); see also Gill v. State, 111 S.W.3d 211, 217 (Tex.
App.—Texarkana 2003, no pet. (holding defense counsel’s failure to move for
instructed verdict was not ineffective assistance because he had no ground on
which to move for an instructed verdict as the State had presented more than a
scintilla of evidence that would have supported a guilty verdict).  

Appellant also asserts that trial counsel rendered
ineffective assistance by failing to object to the punishment jury charge in
his evading arrest or detention case because the indictment did not allow for
enhanced punishment pursuant to section 12.42(a)(2).  For appellant to succeed
on this claim, he must demonstrate that the trial court would have erred in overruling
any such objection.  See Alexander v. State, 282 S.W.3d 701, 709 (Tex.
App.—Houston [14th Dist.] 2009, pet. ref’d); Green v. State, 191 S.W.3d
888, 894 (Tex. App.—Houston [14th Dist.] 2006, pet. ref’d).  As we concluded in
the analysis of appellant’s fourth issue, the jury charge did not improperly
allow for enhancement of the offense of evading arrest or detention to a second
degree felony under section 12.42(a)(2).  Therefore, appellant has not shown
that the trial court would have erred in denying any such objection if it had
been made by trial counsel.[4] 
Accordingly, we overrule appellant’s fifth issue.[5]

Reformation of the Judgment

The State requests that we correct the judgment in
cause no. 1182848, the conviction for evading arrest or detention with a
vehicle, to properly reflect appellant’s pleas to the enhancement paragraphs
and the jury’s findings.  The judgment incorrectly states that appellant
pleaded “true” to the second enhancement paragraph and that the jury found the
enhancement paragraphs “not true.”  The record actually reflects that appellant
pleaded “not true” to both enhancement paragraphs, and the jury found both
enhancement paragraphs “true.”  

Courts of appeals have the authority to modify a
trial court’s judgment and affirm it as modified.  Tex. R. App. P. 43.2(b); Bigley v. State, 865 S.W.2d
26, 27–28 (Tex. Crim. App. 1993).  When a court of appeals has the necessary
information and evidence before it for reformation, it may reform the erroneous
judgment on appeal.  Storr v. State, 126 S.W.3d 647, 654–55 (Tex.
App.—Houston [14th Dist.] 2004, pet. ref’d); see also Ramirez v. State,
No. 07-09-0157-CR, — S.W.3d —, 2011 WL 1085185, at *6 (Tex. App.—Amarillo Mar.
24, 2011, no. pet. h.) (“This Court has the power to modify the judgment of the
court below to make the record speak the truth when we have the necessary
information to do so.”).  

Therefore, we reform the judgment in cause no.
1182848, the conviction for evading arrest or detention in a vehicle, to reflect
that appellant entered a plea of “not true” to the second enhancement paragraph
and that the jury found both enhancement paragraphs true. See Tex. R. App. P. 43.2(b) (allowing courts
of appeals to modify judgments and affirm as modified); Rhoten v. State,
299 S.W.3d 349, 356 (Tex. App.—Texarkana 2009, no pet.) (reforming the judgment
to reflect the appellant’s plea of “guilty” to plea of “not guilty”); Storr,
126 S.W.3d at 655 (reforming judgment to reflect appellant’s plea of “guilty”
to plea of “not guilty”).  

Conclusion

We affirm the judgments as to appellant’s convictions
for unauthorized use of a motor vehicle, possession of a controlled substance,
and aggravated robbery and affirm the judgment as to appellant’s conviction for
evading arrest or detention in a vehicle as reformed to reflect that appellant
entered a plea of “not true” to the second enhancement paragraph and that the
jury found both enhancement paragraphs “true.”  

 

                                                                                    

                                                                        /s/        Sharon
McCally

                                                                                    Justice

 

 

Panel consists of Justices Frost,
Jamison, and McCally.

Do
Not Publish — Tex. R. App. P. 47.2(b). 










[1]
See Leyva v. State, 552 S.W.2d 158, 162–63 (Tex. Crim. App. 1977)
(taking judicial notice that El Paso County is in Texas); Gunter, 327
S.W.3d at 800 (holding officer’s testimony that he worked for the Fort Worth
Police Department, responded to an accident in Tarrant County, and took the
appellant to the Tarrant County jail, and witness’s testimony that appellant
said he had lived in Tarrant County since 1993, were sufficient circumstantial
evidence for the jury to implicitly find the DWI offense occurred in Texas); Walker
v. State, 195 S.W.3d 250, 257–58 (Tex. App.—San Antonio 2006, no pet.)
(holding evidence that the house where the offense occurred was located in
Guadalupe County was sufficient to establish that the offense occurred in
Texas); St. Julian, 132 S.W.3d at 515 (holding that witness’s testimony
that cocaine was found in hotel room located in Harris County was sufficient to
establish that the offense occurred in Harris County); James, 89 S.W.3d
at 89 (holding circumstantial evidence, including testimony that the appellant’s
house, which was near the house where the offense occurred, was located in
Beaumont, and that the assault occurred in Jefferson County was sufficient to
prove that jurisdiction was in Texas); Garcia v. State, 819 S.W.2d 634,
636 (Tex. App.—Corpus Christi 1991, no pet.) (observing that witness testified
the offense took place in Goliad County and taking judicial notice that Goliad
County is in the State of Texas); Hewitt v. State, 734 S.W.2d 745, 747
(Tex. App.—Fort Worth 1987, pet. ref’d) (holding witnesses’ testimony referring
to “Tarrant County,” “Texas Department of Public Safety,” the legal drinking
age in Texas, and specific Tarrant County communities and heavily travelled
thoroughfares was sufficient evidence to support a finding that the DWI offense
occurred in the State of Texas).  





[2]
These links are as follows: (1) whether the defendant was present when a search
was conducted; (2) whether the contraband was in plain view; (3) the
defendant’s proximity to and accessibility of the narcotic; (4) whether the
defendant was under the influence of narcotics when arrested; (5) whether the
defendant possessed other contraband or narcotics when arrested; (6) whether
the defendant made any incriminating statements when arrested; (7) whether the
defendant made furtive gestures or attempted to flee; (8) whether there was an odor
of contraband; (9) whether other contraband or drug paraphernalia were present;
(10) whether the defendant owned or had the right to possess the place where
the drugs were found; (11) whether the place where the drugs were found was
enclosed; (12) whether the defendant was found with a large amount of cash;
(13) whether the conduct of the defendant indicated a consciousness of guilt.  Evans,
202 S.W.3d at 162 n.12.





[3]
See Act of June 16, 2001, 77th Leg., R.S., ch. 1334, § 3, 2001 Tex. Gen.
Laws 3292 (amended 2009) (current version at Tex.
Penal Code Ann. § 38.04(b)(1)(B) (West Supp. 2009)).  The current
provision, section 38.04(b)(1)(B), is identical to its predecessor, which was
located at section 38.04(b)(1).  





[4]
Moreover, appellant did not raise any of his ineffective assistance of counsel
claims in the trial court by way of a motion for new trial.  When the record is
silent as to trial counsel’s strategies, we will not conclude that counsel’s
performance was deficient “unless the challenged conduct was ‘so outrageous
that no competent attorney would have engaged in it.’”  Goodspeed v. State,
187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting Garcia v. State, 57
S.W.3d 436, 440 (Tex. Crim. App. 2001)).  To find that trial counsel was
ineffective based on any of appellant’s assertions would call for speculation
about counsel’s actions.  See Jackson v. State, 877 S.W.2d 768, 771
(Tex. Crim. App. 1994); see also Tong v. State, 25 S.W.3d 707, 714 (Tex.
Crim. App. 2000) (“[W]ithout some explanation as to why counsel acted as he
did, we presume that his actions were the product of an overall strategic
plan.”).  On the record before this court, appellant has failed to rebut the strong
presumption in favor of effective assistance of counsel, and we cannot conclude
that counsel’s performance was deficient.  





[5]
Appellant avers that he received ineffective assistance of counsel with regard
to his conviction for unauthorized use of a motor vehicle.  However, he has not
presented any argument regarding any such ineffective assistance of counsel as
to that conviction, but nonetheless requests a new trial on that conviction in
addition to the other convictions “if this Court finds that trial counsel was
ineffective, . . . since appellant was impacted in all four cases, in either
the guilt stage or the punishment stage of the jury trial.”  Appellant has
waived any claim of ineffective assistance of counsel on appeal regarding his
conviction for unauthorized use of a motor vehicle.  See Tex. R. App. P. 38.1(i) (“The brief must
contain a clear and concise argument for the contentions made, with appropriate
citations to authorities and to the record.”).  In any event, as discussed
above, we hold that appellant has not shown that his trial counsel rendered
ineffective assistance of counsel as to his convictions for evading arrest or
detention with a motor vehicle, possession of a controlled substance, or
aggravated robbery.